IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SARAH STROBEL, individually and by and through her parents TRACY STROBEL and BRIAN STROBEL, | Civil Division<br><br>Case No. 2:15-cv-01089-CB |
| Plaintiff, | |
| vs. | |
| NESHANNOCK TOWNSHIP SCHOOL DISTRICT; TRACEY MCCALLA; LUCA PASSARELLI; LESLIE HERMAN; JEANNE PRISCELL; LINA BUSIN; ANITA SLEIGHTER; GEORGE ROOT,; TINA ROOT and GEORGE ROOT, parents and natural guardians of GEORGE ROOT; TIARA SAADO; ELENA COLIA and SAM SAADO, parents and natural guardians of TIARA SAADO; ANTHONY STAPH; ANTHONY STAPH and SHELLIE STAPH, parents and natural guardians of ANTHONY STAPH; DAVID ROSS; DENA TAYLOR and DAVID ROSS, parents and natural guardians of DAVID ROSS. | |
| Defendants. | |

**BRIEF IN OPPOSITION TO DEFENDANTS NESHANNOCK TOWNSHIP SCHOOL DISTRICT, TRACEY MCCALLA, LUCA PASSARELLI, LESLIE HERMAN, JEANNE PRISCELL, LINA BUSIN AND ANITA SLEIGHTER'S MOTION FOR SUMMARY JUDGMENT**

**I.      Matter Before the Court**

Plaintiff's Response and Brief in Opposition to Neshannock Defendants' Motion for Summary Judgment.

**II.     Facts**

Plaintiff hereby incorporates all the facts and arguments set forth in their Responsive Concise Statement of Material Facts and plaintiff's Concise Statement of Additional Material Facts as if set forth fully herein. This lawsuit arises from a sexual assault of plaintiff Sarah

1

Strobel that took place on a bus ride home from a Neshannock High School field trip to New York City on April 27, 2013. As one of the rules set forth by defendant Neshannock Township School District administration for the trip, students were advised by defendant chaperones that males were to be seated with males and females with females. Following dinner, when plaintiff and the other students returned to the bus, male students were no longer exclusively sitting with males, and females were no longer seated exclusively with females. A male student was now sitting in plaintiff's previous seat and refused to move when requested by plaintiff. Plaintiff then sat with a male student near the rear of the bus.

Defendant chaperones walked down the aisle to collect trash after their dinner stop and despite seeing students of the opposite sex sitting in a prohibited manner, did not correct the seating issue. Following the dinner stop, plaintiff fell asleep on the bus while listening to her iPod. As plaintiff slept, defendants George Root, Tiara Saado, Anthony Staph and David Ross dared each other to touch plaintiff's body without her consent until she awoke, later describing the incident as a "game." At around 12:15 A.M., plaintiff awoke to Tiara Saado and George Root touching her vaginal region and buttocks as David Ross and Anthony Staph also participated and coached the acts.

Plaintiff did not want to cause a scene on the bus with all of her classmates, so she took a seat on her female friend's lap in front of her to tell her two friends what had happened. Plaintiff sobbed and sat in the aisle on the floor of the bus for the remainder of the trip until they returned to Neshannock. No chaperones noticed. When plaintiff's seatmate who was not involved in the sexual assault heard what happened, he expressed a desire to go to the front of the bus and tell the chaperones what had occurred. The male student was threatened by Anthony Staph, one of the students involved in the assault and was unable to report the incident.

When the bus arrived back at Neshannock, Anthony Staph stopped plaintiff as she was exiting the bus and told her not to tell her parents or school officials and that he and plaintiff's boyfriend at the time would "work things out." The following morning, plaintiff reported the assault to her mother, who then informed police and school officials. Defendant McCalla, Principal of Neshannock Junior High School at the time, conducted an "investigation" by questioning some of the students involved in the incident. Plaintiff was not contacted by McCalla for this investigation. The school eventually ordered that Tiara Saado, George Root, and Anthony Staph remain homebound for the remainder of the school year. Defendant David Ross was permitted to remain in school, as school officials believed that although he encouraged the behavior and admitted to another student the night of the assault that he touched plaintiff, his actions did not warrant discipline. Plaintiff returned to school for a day and a half following the incident, but with David Ross still in her classes and her increased anxiety being around the other students, plaintiff decided to remain homebound for the remainder of her freshman year.

Following her freshman year, plaintiff returned to Neshannock for her sophomore year and was continually harassed and intimidated by one of the students involved in the assault, Tiara Saado. Despite continued complaints by plaintiff's mother to the Neshannock faculty, Saado remained in school and did not receive further punishment. As such, after her sophomore year, plaintiff remained homebound for her junior and senior year at Neshannock due to the Neshannock Defendants' indifference to her safety and educational environment concerns.

As the result of the sexual assault, plaintiff suffered anxiety, depression, suicidal ideations, attempted suicide, and continues to suffer from anxiety and depression.

### III. Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.C.P. 56(c). Disputes over facts that may affect the outcome of the suit under the governing law will preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment must be precluded if a dispute about a material fact is genuine, such that a reasonable juror could return a verdict for the nonmoving party based on the evidence. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253 (1968). Succinctly stated:

> "[i]t is true that the issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."

*Id.* at 288-89.

### IV. Argument

Plaintiff has a viable claim against the Individual Neshannock Defendants pursuant to 42 U.S.C. § 1983 for state-created danger, and viable claims against the District pursuant to Title IX and 42 U.S.C. § 1983 for *Monell* liability for failure to train and supervise.

    a. <u>Plaintiff has a viable claim against the Individual Neshannock Defendants under Section 1893 for a state-created danger.</u>

Plaintiff asserts a claim against the Individual Neshannock Defendants pursuant to 42 U.S.C. § 1983 for injury to bodily integrity as a result of a state-created danger. Generally, a state actor does not owe a duty to protect individuals from the private acts of a third person. *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 195 (1989). However, when a state

4

created danger exists such that state action makes a citizen "more vulnerable to injury from another source than he or she would have been in the absence of state intervention," the Third Circuit has imposed liability upon state actors for the conduct or acts of third persons. *Schieber v. City of Philadelphia*, 320 F.3d 409, 416 (3d Cir. 2003).

> In order to establish a "state-created danger" claim, plaintiff must show:
>
> (1) The harm ultimately caused was foreseeable and fairly direct;
>
> (2) A state actor acted with a degree of culpability that shocks the conscience;
>
> (3) A relationship between the state and the plaintiff existed such that "the plaintiff was a foreseeable victim of the defendant's acts," or a "member of a discrete class of persons subjected to the potential harm brought about by the state's actions," as opposed to a member of the public in general; and
>
> (4) A state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Id.* at 281. Plaintiff is able to establish the required elements for a state-created danger, and therefore, summary judgment in favor of the Individual Neshannock Defendants is improper.

### i. "The harm ultimately caused was foreseeable and fairly direct."

The first element of a state-created danger can be established by a showing that plaintiff suffered a foreseeable harm that was directly caused by the affirmative actions of the Individual Neshannock Defendants. *Laucher v. County of Bucks*, 455 F.3d 418, 432 (3d Cir. 2006). That the harm was foreseeable is evidenced by the fact that there was a rule in place hat seating was to be same sex for the duration of the trip. The rule was instituted at the outset of the trip by defendants that males were to sit with males and females with females. Plaintiff's Appendix, **Exhibit I**. Specifically, the rule was in place in order to "lessen the likelihood of adolescent behaviors acting up". Plaintiff's Appendix, **Exhibit H** at 125. Plaintiff when she returned to the bus, requested that Justin Sanko move from her seat, but he refused. *See* Plaintiff's Appendix, **Exhibit B** at 56-

5

57. Despite the presence of six chaperones on the trip, all of the chaperones sat in the front of the bus, allowing students to not only change seats in violation of their rule, but also conduct themselves in an appropriate manner due to the lack of supervision of the chaperones. Defendants' Appendix, Exhibit A at 59. The lack of supervision as a whole, not simply the failure to enforce the rule they created that same sex seating was prohibited, was the cause of plaintiff's harm. Defendants placed and allowed plaintiff to remain in a situation they deemed themselves to be susceptible to adolescent misconduct.

The harm of the sexual assault goes far beyond the failing to enforce one rule on the bus. The chaperones provided no safety to students while on the bus when their sole purpose of being on this trip was to do so. Their own rules were not enforced. After placing students in this known dangerous situation, supervision of the students was non-existent. The harm of adolescent misbehavior was foreseeable and plaintiff suffered serious harm as a result. These are affirmative actions taken and choices made by the chaperones that created this dangerous situation for plaintiff, as contemplated in *Laucher v. County of Bucks*. This harm was foreseeable to defendants in that their original plan, if enforced correctly and supervised adequately, may have prevented the harm. That was their intention in circulating the original rule, which means they knew of the risk. Further, the incident could have been totally prevented had the "chaperones" been interspersed amongst the students.

For the remainder of plaintiff's high school education following the incident, the Individual Neshannock Defendants failed to provide a safe and nonthreatening environment for plaintiff. There were numerous occasions where one of her attackers, Saado, was in violation of her probation and approached or had interactions with plaintiff when she was prohibited from doing so.

6

### ii. "A state actor acted with a degree of culpability that shocks the conscience."

Plaintiff agrees with Neshannock Defendants that *Sanford* reinforces and expounds upon the burden of the plaintiff to establish the conduct of state actors in *Bright* as cited below:

> The level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases. In a "hyperpressurized environment," an intent to cause harm is usually required. On the other hand, in cases where deliberation is possible and officials have time to make "unhurried judgments," deliberate indifference is sufficient.

*Sanford v. Stiles*, 456 F.3d 298, 309 (3d Cir. 2006).

The chaperones present on the bus were not in a "hyperpressurized environment" or in a position to make a hurried judgment, and therefore an intent to cause the harm is not required. Regarding the safety of students on the bus, the Individual Neshannock Defendants had ample time to put security and safety procedures in place for this trip long before students boarded the bus. In fact, the letter sent to parents indicated that this trip was planned several years prior. *See* Plaintiff's Appendix, **Exhibit J**.

Several facts elicited from deposition testimony support the contention that the Individual Neshannock Defendants' actions would "shock the conscience" of a reasonable person. First, all six of the Individual Neshannock Defendants, despite being present for the sole purpose of ensuring students' safety, sat at the front of the bus when four students were involved in sexually assaulting another student in plain sight. Plaintiff's Appendix, **Exhibit B** at 58. No chaperones noticed, took action, or even cared to check.

Second, after plaintiff's male seatmate, who was not involved, attempted to contact Neshannock chaperones in the front of the bus, he was stopped and threatened by the attackers, preventing him from getting to the front of the bus to report the incident. Plaintiff's Appendix, **Exhibit B** at 73-74. Again, no chaperones noticed, took action, or even cared to check.

Third, after plaintiff moved from her seat to tell her female friends about what had happened, plaintiff was sobbing and sitting in the middle of the aisle on the floor for 15-20 minutes for the remainder of the ride home. Plaintiff's Appendix, **Exhibit B** at 69-70. No chaperones noticed, took action, or cared to check.

The Individual Neshannock Defendants continued to act with deliberate indifference towards the safety of plaintiff following the sexual assault during the following school years. On numerous occasions, plaintiff was approached by or found herself alone with one of her attackers, Tiara Saado. Teachers and administrators were allegedly made aware that Saado was not to be near plaintiff. Unfortunately for plaintiff, none of these teachers or administrators ever took action to prevent these encounters from occurring. Plaintiff's Appendix, **Exhibit B** at 97-101 and **Exhibit K**. Despite continued emails from plaintiff's mother regarding their concerns that the "plan" Senior High Principal Luca Passarelli had in place did not work, Passarelli ignored plaintiff's mother's emails, claims that he spoke with Saado on numerous occasions, but failed to discipline Saado and remedy problems and flaws in his "plan" for plaintiff's safety. Plaintiff's Appendix, **Exhibit H** at 108-116. Certainly, the conduct of blatantly disregarding plaintiff's mother's concerns regarding the safety of her child following the sexual assault and refusing to respond to said email(s) about rumors and threatened physical harm, because Passarelli believed the plan was adequate, would "shock the conscience" of a reasonable person.

> iii. **"A relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general."**

Neshannock Defendants skip over the third element on whether the relationship existed between the state and plaintiff at the time in their brief. Clearly, plaintiff was a student at Neshannock School District during the time of the incident, the fieldtrip was school sponsored,

8

and the six chaperones were all employed by Neshannock. As such, plaintiff was a foreseeable victim of the defendants' acts and a member of a discrete class of persons subjected to the potential harm brought about by the state's actions and decisions not to supervise the students.

> iv. **"A state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all."**

Defendants cite numerous cases that indicate that the misuse of state authority, rather than a failure to use it, violates the Due Process Clause. The Third Circuit realized that "[i]t is not, of course, always easy to distinguish between an affirmative act and a failure to act." *Brown v. School Dist. Of Philadelphia*, 456 F. App'x 88, 93 (3d Cir. 2011). However, in *Morrow*, a case that Neshannock Defendants cite, the Third Circuit quotes the Seventh Circuit acknowledging:

> If the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit.

*Morrow v. Balaski*, 719 F.3d 160, 177 (3d Cir. 2013)(citing *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982)). The facts in *Morrow* are distinguishable from the instant case. In *Morrow*, the court found that the school administrators' failure to prevent defendant student from boarding the bus upon which she attacked plaintiff was not an affirmative act. *Morrow* 719 F.3d at 178-179. A student who was continually harassing the plaintiff in *Morrow* boarded the plaintiff's bus (which did not service defendant's home route) after school and threatened to attack the plaintiff. *Morrow*, 719 F.3d at 177. In *Morrow*, the teachers and administrators did not place the defendant on the bus with the plaintiff, but rather failed to prevent her from boarding the bus. This was a failure to act by the school administrators.

In our case, Individual Neshannock Defendants placed plaintiff in harm's way through their planned, but essentially unsupervised, trip to New York, then failed to protect her from harm

9

while on the trip. The decision of Neshannock Defendants to take an overnight trip to New York with a bus full of minor children, driving in the dark both to and from New York, setting up the bus seating arrangements with chaperones in the front of the bus, and allowing sexual misconduct to take place rises above mere negligence. Neshannock Defendants dictated all the terms. Certainly, the Individual Neshannock Defendants failed to protect her from students on the bus, but their actions go above and beyond that mere failure to act by creating the seating and bus arrangements that ultimately put plaintiff in danger and created a hollow policy they knew they would not bother to enforce. The position of the students limits the protections and safety normally afforded to students in a regular school setting. Here, plaintiff was on a bus full of freshman high school students both male and female, traveling out of state, and the only adult persons who could afford plaintiff any safety were at the front of the bus not ensuring their primary responsibility of safety of the students.

    b. <u>Plaintiff has a viable claim against the District under Section 1983 for *Monell* liability.</u>

Plaintiff has a claim against the District for liability arising under Section 1983 for *Monell* Liability for failure to train and supervise. To hold the District liable, plaintiff must demonstrate that there was a constitutional violation and that the violation was caused by the District's policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Plaintiffs can establish municipal liability by pointing out a failure to train, a failure to supervise, a failure to disciple, a failure to adequately screen, etc. *City of Canton v. Harris*, 489 U.S. 378 (1989). A city may be held liable for the underlying constitutional violation committed by a non-policymaking employee if the city's policy is objectively deliberately indifferent to the likelihood a particular constitutional violation would occur. *City of Canton*, 489 U.S. at 388.

There are two ways in which a plaintiff may show the requisite objective deliberate indifference. First, plaintiff may argue that there was an obvious need to train. *City of Canton,* 489 U.S. at 390. Second, if a certain number of events or a pattern of constitutional violations become apparent, the court will hold the city on constructive notice; and if no training, supervision, or discipline is put in place, the city is going to be held liable. *City of Canton*, 489 U.S. at 397.

Failure to adequately train municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations. *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) quoting *Board of County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 404, 117 S. Ct. 1382 (1997). In order for liability to attach under a "failure to train" claim, the identified deficiency in the training program must be closely related to the ultimate injury. *City of Canton,* 489 U.S.at 391.

Here, Passarelli testified that his duties included "ensuring, or ensuring to the best of his capability, the safety and welfare of students" in the District and to "supervise teachers." *See* Plaintiff's Appendix, **Exhibit H** at 15. Passarelli indicated that students are not given a copy of the code of conduct at the beginning of the year, copies of bullying policies are not posted in the classrooms, and students are not even told where to find the District's bullying policy. *See* Plaintiff's Appendix, **Exhibit H,** at 43-45. Additionally, Tracy McCalla, Junior High Principal testified that there is no official or recurring program for bullying prevention, but rather it is simply "discussed" amongst teachers and there was no ongoing requirement that teachers receive professional development in bullying prevention. *See* Plaintiff's Appendix, **Exhibit A**, at 106-107.

The lack of accessible bullying policies to students, as well a complete lack of training and supervision when bullying occurs in the District, was one of the direct causes of plaintiff's harm.

11

c. <u>Plaintiff has a viable claim against the District pursuant to Title IX.</u>

A Title IX claim may exist in cases of student-on-student harassment. *Davis v. Monroe County Bd. Of Educ.*, 526 U.S. 629 (1999). The Supreme Court of the United States held that "recipients of federal funding may be liable for "subject[ing]" their students to discrimination where the recipient is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority." *Id.* at 646-47. In order to succeed under *Davis,* plaintiff must prove (1) the District received federal funds; (2) sexual harassment occurred; (3) the harassment occurred under circumstances wherein the [school district] exercised substantial control over the harasser and the context under which the... sexual harassment occurred; (4) the school district had actual knowledge of the harassment (5) the [school district] was deliberately indifferent to the harassment; and (6) the harassment was so severe, persuasive and objectively offensive that it [could] be said to [have] deprived the victims of equal access to the educational opportunities or benefits provided by the school. *Doe v. North Allegheny School District*, 2011 WL 3667279 at 20-21, citing *Davis.*

As the District is a public school and receives federal funds, plaintiff must then move to the second element, that sexual harassment occurred. Plaintiff has alleged much more than the sexual assault incident on the bus; plaintiff also suffered from severe intimidation and harassment related to the initial sexual assault on multiple occasions during the months and years following the incident on school grounds which administrators of Neshannock were only aware of after receiving emails from plaintiff's mother. Plaintiff's mother's emails included allegations by Saado of plaintiff lying about the sexual assault, being pregnant and having sexually transmitted diseases. *See* emails from plaintiff's mother attached in Plaintiff's Appendix, **Exhibit K.**

After plaintiff was molested by her classmates on the bus, plaintiff was subjected to returning to school with one of her assailants, David Ross, as he was never removed or banned from attending school despite sending Facebook messages to another student the night of the assault admitting that he had inappropriately touched plaintiff. Plaintiff's Appendix, **Exhibit F**. Further, plaintiff became aware that the remaining three (3) assailants, George Root, Tiara Saado, and Anthony Staph, were not formally suspended or expelled, but rather provided "homebound instruction," which is the same alternative option plaintiff, the victim of said assault, was provided. Pursuant to Defendant Neshannock's own definition, homebound instruction is provided to students who are "confined to home or hospital for physical disability, illness, injury, urgent reasons, or when such confinement is recommended for psychological or psychiatric reasons." *See* Neshannock Township School District Board Policy Manual, Section Programs, Title 117- Homebound Instruction attached in Plaintiff's Appendix, **Exhibit L**. Nowhere in the definition is "homebound instruction" referred to or described as a procedure of punishment. To further illustrate this, Defendant Neshannock's Discipline Code provides disciplinary options for various offenses, none of which mention or refer to "homebound instruction." *See* Neshannock Discipline Code- Code of Conduct attached in Plaintiff's Appendix, **Exhibit M**. Knowing that her assailants had gone essentially unpunished and that she would be forced to attend school for the remainder of the year with one of her assailants (David Ross) caused emotional distress so severe that she was eventually unable to attend school and required intensive psychiatric treatment.

Next, during the 2013-2014 school year when plaintiff and her assailants returned to school, defendant Saado maliciously spread sexually charged rumors about plaintiff including that plaintiff lied about the sexual assault on the bus, that plaintiff was pregnant, and that plaintiff had a sexually transmitted disease. Plaintiff's Appendix, **Exhibit K** and **Exhibit B** at 112-115. Not

only was defendant Neshannock aware of Saado's conduct, but actively attempted to conceal it and was angered when Saado's conduct was revealed to plaintiff's mother. Rather than disciplining Saado, Passarelli brought two of plaintiff's friends into his office and told them to stop reporting to plaintiff the rumors Saado was spreading. Plaintiff's Appendix, **Exhibit C** at 107-108. One of the students, Taylor King stated in her deposition that she felt as if she was in trouble for telling plaintiff what was occurring in school during plaintiff's absence. Plaintiff's Appendix, **Exhibit C** at 107-108. There were also rumors that defendant Saado had threatened to "lay out" plaintiff when she saw her, and that if plaintiff showed up at a tennis match she would "knock her head off." *See* Plaintiff's Appendix, **Exhibit B** 104-105 and **Exhibit G**.

The third criterion requires that harassment occurred under circumstances wherein "the [school district] exercised substantial control over the harasser and the context under which the... sexual harassment occurred." Moreover, because the harassment must occur "under" "the operations of" a funding recipient, *see* 20 U.S.C. § 1681(a); § 1687 (defining "program or activity"), the harassment must take place in a context subject to the school district's control, Webster's Third New International Dictionary, supra, at 2487 (defining "under" as "in or into a condition of subjection, regulation, or subordination"; "subject to the guidance and instruction of"); Random House Dictionary of the English Language, supra, at 1543 (defining "under" as "subject to the authority, direction, or supervision of"). *Davis v. Monroe County* at 644.

There is no doubt that the District had substantial control over plaintiff's attackers both at the time of the initial sexual assault and the following incidents of sexual harassment in school. Passarelli stated in his deposition that students were advised that they were Neshannock students during their time on the trip and that school rules applied. Plaintiff's Appendix, **Exhibit H** at 65-66. The 40-50 Neshannock freshman were confined on a bus to and from New York under the

exclusive "supervision" of the six Neshannock faculty members and the harassers were present both on the bus and in the school when spreading the rumors regarding plaintiff following the initial sexual assault.

Fourth, the District in this case had actual knowledge of the harassment. Following the initial sexual assault on the bus home from New York, the District was well aware the following day that the sexual assault on the bus occurred. Following the initial assault, every rumor and encounter that plaintiff had with defendant Saado was reported to administrators by plaintiff's mother. Plaintiff's Appendix, **Exhibit K**.

Fifth, the deliberate indifference must, at a minimum, cause student(s) to undergo harassment or make them liable or vulnerable to it. *Davis v. Monroe County* at 644 citing Random House Dictionary of the English Language 1415 (1966) (defining "subject" as "to cause to undergo the action of something specified; expose" or "to make liable or vulnerable; lay open; expose"); Webster's Third New International Dictionary 2275 (1961) (defining "subject" as "to cause to undergo or submit to: make submit to a particular action or effect: EXPOSE."

Despite the multiple complaints to the District administration that rumors about plaintiff being pregnant, having STDs or lying about the sexual assault, Saado was not disciplined and her actions did not cease. Plaintiff's mother sent emails with concerns she had about Saado, some emails of which were not answered by the administration because they believed the "plan" in place was working. Plaintiff's Appendix, **Exhibit H** at 108-116. Despite stating that a student who violated the plan and contacted or approached plaintiff would "absolutely" be disciplined, Saado was brought in to Passarelli's office, verbally warned repeatedly to leave plaintiff alone and cease rumors, yet continued to do so. Plaintiff's Appendix, **Exhibit H** at 98-99.

15

Finally, it is indisputable that the harassment was so severe, persuasive and objectively offensive that it deprived plaintiff of equal access to the educational opportunities or benefits provided by the school. Plaintiff had to face one of her attackers daily in class following the sexual assault for the remainder of her freshman year and had to seek homebound instruction. She felt stressed and overwhelmed in crowds, ate lunch in the guidance counselor's room during some of her sophomore year, and was upset that she was missing school and losing friends. Plaintiff's Appendix, **Exhibit B** at 125 and 139. She once voluntarily admitted herself to the psychiatric ward at Sharon Regional Hospital and was hospitalized a second time for mental health issues when she attempted suicide by overdosing on her sleeping pills. Plaintiff's Appendix, **Exhibit B** at 136-39.

Plaintiff requested homebound instruction for her junior and senior year as was suggested by her treating physicians. As all of the harassment and intimidation plaintiff suffered was a direct result of the prior sexual assault and was both sexually harassing and retaliatory in nature, it is indisputable that such behavior was sexual in nature and qualifies as such under a Title IX claim.

    d. <u>Plaintiff is entitled to punitive damages.</u>

Plaintiff recognizes that punitive damages are not recoverable against the municipal entities under *Gaudino* and *Doe v. Upper St. Clair* as cited by Neshannock Defendants.

Punitive damages are proper against the Individual Neshannock Defendants under 42 U.S.C. § 1983. Plaintiff must demonstrate that the Individual Neshannock Defendants' conduct was motivated by evil motive or intent, or was recklessly or callously indifferent to her federally protected rights. *Eichenlaub v. Twp. Of Indiana*, 214 Fed. Appx. 218, 223-24 (3d Cir. 2007).

Defendants argue that the only inappropriate actions plaintiff complained of regarding the assault was the failure of chaperones to correct the seating arrangements and sitting in the front of

the bus. The sole purpose of their presence was to provide safety to students on the bus for a trip that the administration had planned. However, the ongoing harassment and unsafe educational environment for plaintiff within the District interfered with her educational opportunities as a result of the state-created danger by Individual Neshannock defendants' actions. In *In Re Bayside Prison Litigation*, the administrator of the prison was subject to punitive damages under an inmate's 1983 action for his failure to end beatings at the prison that he did not personally participate in, but also did nothing to end. *In re Bayside Prison Litigation*, 331 Fed. Appx. 987 (3d Cir. 2009).

Here, plaintiff does not claim that any of the individuals named participated in the sexual assault and following harassment related to it, but that they were recklessly and callously indifferent to the safety of students while on the bus and were aware of the continued harassment did nothing to prevent further harm to plaintiff. Individual Neshannock Defendants, namely Tracy McCalla, and Luca Passarelli, although they claimed to have acted in a proactive manner to protect plaintiff, failed plaintiff many times and prevented her from attending school in her junior and senior years. Despite repeated complaints to Passarelli that Saado had physically threatened plaintiff twice, spread rumors that plaintiff was making up the sexual assault, was pregnant, and had a sexually transmitted disease, and was approached by Saado at least twice without administrator intervention, the "plan" was not changed. No measures were taken to protect plaintiff and provide a safe educational environment other than verbal warnings to Saado, thus entitling plaintiff to punitive damages.

  e. <u>The Individual Neshannock Defendants are not entitled to qualified immunity regarding all of plaintiff's claims.</u>

The issue is whether there was "sufficient precedent at the time of the action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited." *Mammaro v. New Jersey Div. of Child Prot. & Permanency*, 814

F.3d 164, 169 (3d Cir.2016)(quoting *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001)). While there need not be "a case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015)(quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). When a state created danger exists such that state action makes a citizen "more vulnerable to injury from another source than he or she would have been in the absence of state intervention," the Third Circuit has imposed liability upon state actors for the conduct or acts of third persons. *Schieber v. City of Philadelphia*, 320 F.3d 409, 416 (3d Cir. 2003).

As discussed above, in *Morrow*, the court acknowledged that individual school administrators could be held liable for the harms from a private actor if the state-created danger theory applies. *Morrow*, 719 F.3d at 177. Although in *Morrow*, the administrators were not held liable because their failure to prevent the bully from boarding the bus was not an affirmative act, it certainly would put school administrators on notice that if they did create the situation on the bus by planning and placing the students together on a bus for an overnight trip, they would be held liable for injuries. This is true despite the fact that the injuries sustained were the result of the deeds of a private actor.

In *Sciotto*, the court concluded that Sciotto had a viable claim for violation of bodily integrity under the Fourteenth Amendment and declined to grant the Sciotto defendants qualified immunity because the constitutional rights of students to be free "from school officials' deliberate indifference to, or affirmative acts that increase the danger of, serious injury from unjustified invasions of bodily integrity perpetrated by third parties in the school setting" was clearly established. *Sciotto v. Marple Newtown Sch. Dist.*, 81 F. Supp. 2d 559, 568 (E.D. Pa. 1999).

Although there is not a case identical to the case before this Court, here, there is sufficient evidence from the record that a jury could conclude that the Individual Neshannock Defendants were reckless in their planning of safety procedures for the New York trip, the handling of an incident of sexual assault, and in their attempts to remedy the problems involving Saado. For the reasons set forth in section (a) above, a state created danger existed. Their deliberate indifference and affirmative acts that increased the danger of harm to the bodily integrity of plaintiff perpetrated by private actors in a school setting is obvious. When this danger exists, school officials and other administrators may be held liable for the harm caused by private actors.

**V.     Conclusion**

For the foregoing reasons, and those set forth in plaintiff's Responsive Concise Statement of Material Facts, plaintiff respectfully requests that this Honorable Court deny Neshannock Defendants' Motion for Summary Judgment in its entirety.

Respectfully submitted,

*/s/ Peter D. Friday*
Peter D. Friday, Esquire
Pa. I.D. # 48746
Kandace Hunter Mandarino, Esquire
Pa. I.D. #324374
Attorneys for Plaintiff

Friday & Cox LLC
1405 McFarland Road
Pittsburgh, PA 15216
Tel: (412) 561-4290
Fax: (412) 561-4291
pfriday@fridaylaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of April 2018 the foregoing **Brief in Opposition to Defendants Neshannock Township School District, Tracey Mccalla, Luca Passarelli, Leslie Herman, Jeanne Priscell, Lina Busin and Anita Aleighter's Motion for Summary Judgment** was served via the District Court's CM/ECF system and/or first class mail upon the following:

Philip J. Sbrolla, Esquire
Holly M. Whalen, Esquire
Cipriani & Werner, P.C.
650 Washington Road, Suite 700
Pittsburgh, PA 15228
*Counsel for Neshannock Township School District; Tracey McCalla, Luca Passarelli, Leslie Herma, Jeanne Priscell, Lina Busin, Anita Sleighter*

Gary F. Lynch, Esquire
Carlson Lynch Sweet & Kilpela, LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
*Counsel for George Root and Tina Root and George Root, parents and natural guardians of George Root*

VIA Regular Mail:

Tiara Alexis Saado
182 McCreary Drive
New Castle, PA 16105

Dena T. and David R. and D.R
909 East Elizabeth Avenue
New Castle, PA 16105

Anthony Staph
132 Fireside Drive
New Castle, PA 16105

By: */s/ Peter D. Friday*
Peter D. Friday, Esquire
Pa I.D. # 48746
Kandace Hunter Mandarino, Esquire
Pa. I.D. #324374
pfriday@fridaylaw.com
kmandarino@fridaylaw.com
*Attorneys for Plaintiff*

Friday & Cox LLC
1405 McFarland Road
Pittsburgh, Pennsylvania 15216
(412)561-4290